UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Daniel Patrick Moynihan U.S Courthouse
500 Pearl Street
New York, NY 10007
(212) 805-0136

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case No.: **20cv3251** |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WOLTERS KLUWER UNITED | ) | <u>Hon.</u> |
| STATES INC., | ) | Judge Presiding |
| LISA G. LERMAN, | ) | Hon. |
| PHILIP G. SHRAG, | ) | <u>Magistrate Judge</u> |
| ROBERT RUBISON, | ) | |
| *Defendants.* | ) | Jury Trial Demanded |

## COMPLAINT

I, *plaintiff* Andrew U. D. Straw, for my Complaint against the defendants herein, allege that language printed against my interest in a book by the above individuals and published by Wolters Kluwer was in fact retaliation for my ADA work and inflicted emotional injuries as well:

## PERSONAL FACTS

1.     My residence is in the Philippines now.  I have no office myself.

2.     I have engaged in reform efforts to protect disability access.

3.     I live at 40% of the poverty level now because I support my home

health aide and 4 Filipino children whose fathers abandoned them or

were murdered in front of them.  Due to the lack of justice in the United

1

States, the abuses of my person, and many violations of my human rights under International Law, the Philippines Department of Justice certified me as an asylum seeker on **October 2, 2019**.  Exhibit 2.

## DISABILITIES

4.    I have severe physical and mental disabilities from public service. I hereby incorporate by reference the following documents from *Straw v. Village of Streamwood, et. al.*, 3:16-cv-50387 (N.D. Ill.): my affidavit regarding disabilities, Exhibit 4 in that case, and all evidence thereof mentioned in that affidavit, Exhibits 5-10.  The x-rays of my broken legs and pelvis are easily seen on the webpage I set up to display and explain my disabilities, including mental ones: http://disability.andrewstraw.com

5.    I have been attacked for having mental disabilities from being poisoned at my birth when I was born aboard Camp LeJeune Naval Hospital, part of a massive EPA Superfund site. http://camplejeune.andrewstraw.com

6.    I have been adjudicated as disabled by Illinois Court of Appeals, which recognized that **I am a disability rights public figure**.  *Straw v. Chamber*, 2015 IL App (1st) 143094-U (at *2).

7.     I was also adjudicated in 2020 as disabled for purposes of the ADA, Title II, in the final ORDER of *Straw v. North Carolina*, 7:18-cv-74-M (E.D. N.C. 2020); on appeal at *Straw v. North Carolina*, 20-1295 (4th Cir.).

8.     I am a disability rights political figure because I founded "Disability Party" on 2/5/2013 and it now has thousands of followers in the U.S.A. and abroad.

9.     The ADA Amendments Act of 2008 guarantees that mitigating or ameliorating treatments should be disregarded when considering the disability.   42 USC §12102(4)(E)(i).   The same standard is true of the Rehabilitation Act of 1973.

10.    The state of my right hip and right femur and left leg and ankle show that I would be in a wheelchair all the time without that metal keeping me together.   I am even missing a large portion of the top of my right femur from the total hip replacement, which includes a prosthetic partial femur.   I must be considered as a person who uses a wheelchair because I could be in that state with a single trip and fall, I have used a wheelchair in the past, and the ADA says I am in that "wheelchair-using state" forever **as a matter of law**.   42 USC §12102(4)(E)(i).

11.   I have sued the City of South Bend in Indiana and sought the assistance of the Federal Highway Administration's Office of Civil Rights in 2015.  *Straw v. City of South Bend, et. al.*, 3:16-cv-342-JED-MGG (N.D. Ind.).  FHWA assisted me.

12.   FHWA said that blocking accessible features with snow is prohibited under the ADA, Title II.  (Exhibit 16, *Straw v. Streamwood*). I settled with South Bend years ago.  Similarly, I settled with Kane County, Illinois, on or about March 2017 due to that local government leaving a large pile of snow in 50% of its handicap parking serving the Election Board office when I was a congressional candidate there.

13.   These settlements are evidence that my ADA work in the N. District of Illinois and the N. District of Indiana is yielding some results for people with disabilities.  I have also set an Illinois human rights precedent that businesses deliberately piling snow into handicap parking is discrimination on its face.  *Straw v. Reposteria*, 2015CP3451 (Ill. Hum. Rts. Comm. 2018).  I had standing to do this because of my physical disabilities obtained from my sacrifice to 400+ Indiana courts.

14.   The Indiana Supreme Court has discriminated against me for the past ***19 years*** for the reasons I gave in *Straw v. Indiana Supreme Court,*

*et. al.*, 1:16-cv-3483-SEB-TAB (S.D. Ind.); *Andrew U. D. Straw v. State of Indiana, by Gov. Eric Holcomb*, 49D10-1907-PL-030392 (Marion County Superior Court #10).  See also: http://camplejeune.andrewstraw.com/

15.   Indiana attacked my Camp LeJeune disability, bipolar disorder, and has persisted in attacking me on that basis for 19 years since I revealed it as an Indiana Supreme Court employee applying for the bar exam in 2001.

16.   I am suing the United States in Virginia for the massive due process disability civil rights violation infestation in the Midwest federal courts, including the **7th Circuit hiring my appellee** and making him a **federal judge** before disfavoring me in his favor in my appeal by inventing unique *res judicata* law when he was never my defendant before and his ADA violations were never evaluated.  *Straw v. U.S. District Court, et. al.*, 1:18-cv-278-CMH (E.D. Va. 2020) (**NB: Dkts. 7 & 20**) (NoA and Docketing Statement filed, March 2020).

17.   I am very sensitive and absolutely intolerant to disability discrimination and denial of my rights to accommodations and this increases the level of damages that are due here.

# BOOK

18.    This case is about a book that injured me.  The book is called *Ethical Problems in Law* and was published by defendant Wolters Kluwer USA Inc. in **February 2020**.  eISBN 978-1-5438-1744-7.    I found myself mentioned at the following Google Books link, open to the public:

19.    [https://books.google.com.ph/books?id=7anODwAAQBAJ&pg=PT597&dq=andrew+straw+%22lawyer+should+have+known%22&hl=en&sa=X&ved=0ahUKEwjWto2D1azoAhXOGaYKHSTgCCAQ6AEIKDAA#v=onepage&q=andrew%20straw%20%22lawyer%20should%20have%20known%22&f=false](https://books.google.com.ph/books?id=7anODwAAQBAJ&pg=PT597&dq=andrew+straw+%22lawyer+should+have+known%22&hl=en&sa=X&ved=0ahUKEwjWto2D1azoAhXOGaYKHSTgCCAQ6AEIKDAA#v=onepage&q=andrew%20straw%20%22lawyer%20should%20have%20known%22&f=false)

20.    The language I object to concerns my bogus Indiana Supreme Court discipline.

21.    I sued twice to stop that Indiana discipline because it represented a retaliation against my ADA complaint about the Indiana Supreme Court and over a decade of disability violations.  My ADA complaint was not filed by the Indiana Supreme Court clerk twice, and after the second refusal, he sent it to the ADA coordinator of the Court.  Before responding to me, this ADA coordinator attacked me with a disciplinary complaint just days after she received my ADA complaint.   *Straw v. Indiana*

*Supreme Court, et. al.*, 1:16-cv-3483-SEB (S.D. Ind. 2/16/2017)(**Dkts. 1-11 & 1-13**).   http://discipline.andrewstraw.com

22.   With my federal lawsuit still open, the Indiana Supreme Court issued its discipline.   180 days of suspension that was reciprocally adopted by 4 U.S. District Courts, lasting over 3 years because there was no hearing any other fairness.   There was an avalanche of due process violations here and I invite the Court to review them on my links dedicated to this purpose.   http://discipline.andrewstraw.com

23.   http://dueprocess.andrewstraw.com

24.   http://bipolar.andrewstraw.com

25.   http://camplejeune.andrewstraw.com

26.   http://curtishill.andrewstraw.com

27.   http://crime.andrewstraw.com

28.   The Virginia State Bar convened a 3-judge panel to review thousands of pages of evidence I provided and I appeared telephonically before that panel to defend myself.   The VSB found that I had not done anything worthy of any discipline at all, not even a private reprimand or fine of any kind.   VSB stated that I had proven by **clear and convincing evidence** that I would not be disciplined in Virginia for the exact same

actions and found that my cases and filings Indiana attacked were not as bad as Indiana said, finding them not to be "totally frivolous."

29.   https://www.vsb.org/docs/Straw-062217.pdf

30.   The Indiana Supreme Court attacked my federal ADA cases as frivolous, but in one case, the judge did not find that my case was frivolous, objecting to my standing and dismissing on that grounds.

31.   This was the case the defendant authors and the publisher defendant chose to write about.

32.   The background was 2014 and the U.S. Department of Justice had achieved a victory over LSAC for disability violations in the administration of the LSAT.  This was national news, the fact that LSAC was identifying which LSAT takers asked for disability accommodations by sending that information to the law schools they were applying to.

33.   https://www.justice.gov/opa/pr/law-school-admission-council-agrees-systemic-reforms-and-773-million-payment-settle-justice

34.   LSAC was found in contempt over this in *2019*. https://www.lawyersmutualnc.com/blog/lsat-found-in-contempt-for-disability-accommodations

35.   I cannot imagine a greater example of an entire law school system nationwide engaging in disability discrimination.

36.   After being so aghast at this national discrimination and knowing that state courts discriminate, *Tennessee v. Lane*, 541 U.S. 509 (2004), I investigated a response.   I first asked the ABA if it collected this information or would start, and the answer was no.   That was private.   I like to resolve such matters privately if possible.

37.   I was the statistical analyst for the entire Indiana judicial branch and was hired by the Chief Justice and the State Court Administrator in 2000.   I know the value of statistics.   Some people might find stats to be dry, but I see them as accurately describing stories and situations.

38.   What I found was that the ABA forced all law schools as a condition of accreditation to collect certain statistics.   Form 509 is what the ABA uses and all law schools must fill it out.

39.   Form 509 directs the law schools to collect data on gender and race, but not disability.   There is no privacy issue in this data and it has been collected this way for gender and race for decades.

40.   Obviously, there are several reasons for gathering civil rights data such as this and it includes ensuring that women and minorities improve

their numbers in the profession.  Further, the form is published on the webpage for every law school so the public can see the progress.  Further, prospective law students can choose to go to a school that is doing better on the numbers.

41.   I sued the top 50 law schools and the ABA for not doing the exact same thing for disabled law students.  The LSAC LSAT scandal was ample reason to ask for this.  I should have been granted ADA tester standing status under either Title II or Title III of the ADA because both public and private law schools have to file Form 509.  After a hearing wherein the judge brought to my attention the sheer amount of answers and motions to dismiss, I decided to winnow the case down to the ABA, since it publishes Form 509.

42.   Despite the fact that I was investigating a law school to pursue a Ph.D. or SJD on this very topic, the judge said I did not have standing.

43.   I did not appeal.  I was a novice at federal lawsuits and this was about the 2nd one I had ever filed.  Given the lack of tester standing in the 7th Circuit that I later discovered trying to force local governments to keep the snow off of their sidewalks, I was wise not to appeal.  *Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir. 2018)

44.    I now know that other circuits do provide tester standing under the

ADA, both Titles II and III.  *Tandy v. City of Wichita*, 380 F.3d 1277 (10th

Cir.); *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir. 2017).

45.    Those statistics are more important today than the information for

women and minorities.  There has not been a national discrimination

crisis like that with disabilities for women or minorities, but those groups

get this information and they are forging rapidly ahead.  Women in 2020

are the editors of all of the top 16 law reviews in the United States.

46.    The book ridiculed me by making me seem totally incompetent just

for asking this information, but it seems the only information the

defendants relied upon was the Indiana discipline order.  *In Re Straw*, 68

N.E.3d 1070 (Ind. 2/14/2017).

47.    This makes the defendants both incompetent and biased in favor of

my abusive former employer.  They should have asked *me* before

ridiculing me and to see this blistering attack in a major book on legal

ethics cannot stand.

48.    The language I object to is as follows, from Google Books preview:

> The lawyer should have known that his claims were
> groundless.  Attorney Andrew Straw asserted baseless claims
> or defenses in four different lawsuits.  In one of these four (as
> an example), he sued the American Bar Association and 50

law schools to require each defendant to collect disability data from students and faculty and supply it to him. The Americans with Disabilities Act (ADA), under which he made his claim, did not require such disclosure. In fact, if the data had been disclosed, it would have violated law protecting the privacy of student records. Straw was found to have violated Rule 3.1 by filing lawsuits that had no legal basis. * * *

49.   *I did no such thing* and my original complaint (Ex. 1) and amended complaint (Ex. 2) only asked that the ABA start collecting data the **same way it does for gender and race**. I did not ask for private data about individuals and this is the garbage, the ==falsehood== that needs to be denounced publicly. See ¶50, Request for Relief. *All I asked was to add more data to Form 509.*

50.   The defendants colluded with a known ADA violator in the Indiana Supreme Court and repeated those Indiana falsehoods. The defendants are colluding with a state supreme court that bans all disabled people from practicing law. *Straw v. Indiana*, 20-1332 (4th Cir.).

51.   My reasons for asking the ABA to collect this data were sound reasons, not frivolous or unethical reasons.

52.   The insinuation that I wanted to invade someone's privacy was nonsense. It is no more an invasion to ask about disability than it is to ask about gender and race. This was a straw man argument based on a

falsehood used by the Indiana Supreme Court to justify its discrimination and attacks on me in retaliation.

53.     Not only was it *not* unethical for me to make those demands, I was correct and should have been granted the relief.  Harvard Law School now collects this information and started doing so in the same year, 2017, that the Indiana Supreme Court began its discipline because of my case. Harvard Law School revealed in 2019 that its law students have mental illness, 60% of them.   https://abovethelaw.com/2019/12/mental-health-issues-take-center-stage-at-harvard-law-school/

54.     Now, if I were so wrong, how could Harvard both collect that information and reveal it to the media?   The fact is that *I was 100% right* and my discipline was an abuse and I will have my revenge after all. Indiana will be reformed and it will stop violating lawyers with disabilities, **suspending them all categorically**, along with its friends in the federal courts who enabled this.  http://reform.andrewstraw.com

55.     It is worth noting that in 2018, the **ABA settled with me** after I sued it a second time, this time for expelling me based on the bogus Indiana discipline that was based on my 2014 case against the ABA.  *Straw v. ABA*, 18-1795 (7th Cir. June 2018).  An **insurance company** also settled

13

with me in 2019 after refusing to do business with me.  I cannot name this defendant due to the agreement.  I had a variety of settlements before this concerning handicap parking, including against Kane County, Illinois, South Bend, Indiana, Pete Buttigieg (as mayor of South Bend), and several businesses in Illinois that left snow in their handicap parking or had no handicap parking at all. http://www.andrewstraw.com/accessviolations.html

56.    Even the Federal Highway Administration stepped in and agreed with me that handicap parking must be provided and must not be blocked with snow.  Those victories show that I know what I am talking about, I am a civil rights leader, and I must have justice against these law professors who don't know what they are talking about and published very hurtful and painful things against me without even asking me what happened.

## COUNT I: ADA TITLE V

57.    The ADA Title V prohibits retaliation for filing any ADA lawsuit or proceeding.  **I had a right to file that 2014 ABA lawsuit.**  42 U.S.C. § 12133.  *Straw v. American Bar Association Section of Legal Education and Admission to the Bar et. al.*, 1:14-cv-05194-TMD (N.D. Ill. 2015).

Indiana's attack on this ABA lawsuit was retaliation against it.  42 U.S.C. § 12203.  The ABA expelled me because of Indiana and its discipline but **settled with me** in 2018 after I sued the ABA *a second time*.  *Straw v. ABA*, 18-1795 (7th Cir. 2018).

58.   The Indiana Supreme Court was not a party to either lawsuit and was not privy to either.  In fact, the disciplinary complaint (filed 9/3/2014) was filed against my 2014 ABA lawsuit **before** the judge even dismissed it in 2015 or said a word against it.  http://discipline.andrewstraw.com Indiana did not even know how the case would turn out when it started attacking it as unethical using its ADA coordinator.  That's because the disciplinary complaint was simply the **response** to my own ADA complaint about the Indiana Supreme Court.  It's obvious that it was retaliation.

59.   My lawsuit was meant to address a national discrimination problem revealed by the U.S. DOJ in the **same year**.  The ABA has not fixed this and Form 509 still needs to include disability in 2020.  I keep asking and the answer is still no, even though Harvard Law School agrees with me and has collected this information for the past 3 years.

60.    42 U.S.C. § 12203 and 28 C.F.R. § 35.134 prohibit retaliation by

anyone.  See also, http://www.ada.gov/reg2.html  and

61.    https://www.ada.gov/taman2.html#II-3.11000:

> II-3.11000 Retaliation or coercion. Individuals who exercise
> their rights under the ADA, or assist others in exercising their
> rights, are **protected from retaliation**. The prohibition against
> retaliation or coercion ==applies broadly== to **any individual or
> entity that seeks to prevent an individual from exercising his
> or her rights or to retaliate against him or her for having
> exercised those rights**. ==Any form of retaliation== or coercion,
> including threats, intimidation, or interference, ==is prohibited==
> if it interferes with the exercise of rights under the Act.

> ILLUSTRATION 1: A, a private individual, harasses X, an
> individual with cerebral palsy, in an effort to prevent X from
> attending a concert in a State park. A has violated the ADA.

> ILLUSTRATION 2: A State tax official delays a tax refund for
> M, because M testified in a title II grievance proceeding
> involving the inaccessibility of the tax information office. The
> State has illegally retaliated against M in violation of title II.

62.    Republishing the vicious attacks of my former employer and a

disloyal ADA coordinator and saying "I should have known better"

amount to **additional retaliation** and collusion with that state supreme

court.  Since Title II of the ADA allows for damages, so does a collusion

with a Title II entity under **Title V**.  *Barnes v. Gorman*, 536 U.S. 181

(2002) allowed compensatory damages of $1 million under Title II.

**ADA TITLES II/V RETALIATION DAMAGES: $1,000,000**

## COUNT II: INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

63.    Since I am a public figure, I am limited in my ability to demand relief for defamation.  However, the attack on me and the claim that I am an unethical lawyer go to the very heart of me as a person.  Further, my disability from being poisoned by the U.S. Marine Corps causes me to experience extreme emotional turmoil when someone mistreats me in this way, so publicly, so hatefully.  I have an eggshell skull due to my bipolar disorder, a mental illness based on physical changes to my brain, especially the hippocampus, as is easily verified from medical literature.

64.    https://www.sciencedaily.com/releases/2017/01/170124144000.htm

65.    This is why I take *physical substances* to treat the physical condition: Lithium Carbonate, Quetiapine, and Propanolol.

66.    Concerning IIED:

> * * * [U]nder New York law, a cause of action alleging intentional infliction of emotion distress "has four elements: (i) **extreme and outrageous conduct**; (ii) **intent to cause, or disregard of a substantial probability of causing, severe emotional distress**; (iii) a **causal connection** between the conduct and injury; and (iv) **severe emotional distress**" (*Howell v New York Post Co.*, 81 NY2d at 121; see *Klein v Metropolitan Child Servs., Inc.*, 100 AD3d 708, 710; see also 2A NY PJI2d 3:6 at 54-55 [2014]).

67.   Here, under oath, I allege (**element iv**) to have been severely distressed and made physically and mentally sick by this publication **on the subject of me and my ADA work** to help the disabled public and disabled law students.   The ABA case was and is an ADA case.   The defendants should not have published those falsehoods about me and in fact should have kept their mouths shut if they did not have something constructive to say about **improving disability access in law school admissions**.   They didn't ask me.   They just piled on with my former employer who was abusing me.

68.   Here, the causal connection (**element iii**) is the very public publishing of this attack on me in a professional publication that will be available in law school libraries forever unless something is done now. This will be injuring me permanently and even after my death.

69.   The language suggesting I should have known that my case was unethical shows the deliberate nature of it (**element ii**).

70.   Any child knows that it is wrong to deliberately hurt a disabled person and in this case, I am disabled and adjudicated that way.   I am severely disabled from the crimes of others and I live in poverty on SSDI.

http://crime.andrewstraw.com  & http://disability.andrewstraw.com

71.   Attacking a disabled lawyer who meticulously documented a method to address national disability discrimination in law school admissions is picking on a disabled person trying to help other disabled people.  It is so outrageous to do this (**element i**).  Even the Bible makes it a terrible sin to pick on and hurt a disabled person.  Lev. 19-14.  A court should certainly not allow it.

72.   Regarding the eggshell skull, I cite to:  *Williams v. Bright*, 230 A.D.2d 548, 658 N.Y.S.2d 910, 912 n. 2 (1st Dep't 1997) (recognizing that the "eggshell skull doctrine" is "traditionally [applied] to a plaintiff's preexisting physical condition, mental illness or psychological disability." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192 (2nd Cir. 2014)).

73.   **DAMAGES FOR IIED: $4,000,000**

74.   **TOTAL DAMAGES: $5,000,000**

### PRAYER FOR RELIEF

75.   I demand **$5,000,000** in compensatory damages.  I do not claim punitive damages but would accept them on the IIED count if the Court or a jury deems it is warranted.

76.   I also demand an injunction to remove the language about me from every copy of this book or recall the book altogether and do a reprint not

including me or noting that what I did published in that book was not unethical by any means.  If the book is not recalled, a note should be placed in every copy that, **"Andrew U. D. Straw's efforts were reforms in nature and he did not seek anyone's private information to be given to him, but instead factually his demand was just to modify the ABA Form 509 so disability is treated the same as race and gender.  This is a reasonable request that should have been granted and would be in this Court."**

## DECLARATORY JUDGMENT

77.   I seek declaratory judgment that even though my 2014 ADA case against the ABA was dismissed, it was not frivolous.  Also, I seek a declaration that asking for the same information women and minorities get on the ABA Form 509 is reasonable and mild in addressing the LSAC LSAT discrimination.  I ask exoneration and that I was asking for a change that is in the public interest.  My other 3 cases were about parenting time rights for a disabled parents, health and disability privacy when a newspaper demanded my Medicare account access, and punishment for an ADA coordinator and state supreme court for interference in low court cases to inflict damage on a former employee of

the Court. All of my cases should be declared reasonable and not frivolous. http://reform.andrewstraw.com

## JURISDICTION AND VENUE

78.   This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it is a federal question action based on the ADA Titles II & V, which is valid legislation under the 14th Amendment. The additional count for Intentional Infliction of Emotional Distress falls under supplemental jurisdiction. 28 U.S. Code § 1367

79.   Venue properly lies in this federal district under 28 U.S.C. §1391(b), as the defendant publisher is a New York corporation located in New York City and acted with collusion. The other defendants can be expected to participate here since they voluntarily published and caused injury through the New York City publisher.

I, Attorney Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury. **DATE: April 13, 2020**

Respectfully submitted,

s/ ANDREW U. D. STRAW
700 12th ST NW, STE 700, PMB 92403
Washington, D.C. 20005
Telephone: (847) 807-5237  andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that I filed the above COMPLAINT and 2 EXHIBITS and 4 COMPLETED SUMMONS FORMS and a CIVIL COVER SHEET and *IFP* MOTION with *IFP* AFFIDAVIT and MOTION FOR U.S. MARSHAL SERVICE and 4 USM 285 FORMS with the Clerk of this Court via U.S. Mail, First Class and Postage Prepaid using Docsmit.com, on **April 13, 2020**, and this will be served on all attorneys of record as well as permanently available through Pacer.gov.

Regarding my signatures, I ask that the signature affixed hereto be considered my **original signature** since it was created on paper with a permanent marker by me in 2011 and as it appears here and elsewhere, it should be considered **a stamp**, with the ink or toner of the printer recreating my original signature identically. When Docsmit prints my documents and this signature, it has my full permission to do so and it is my original signature created and adopted by me. This is the original signature stamp I reference:

Respectfully submitted,

s/ ANDREW U. D. STRAW
700 12th ST NW, STE 700
PMB 92403
Washington, D.C. 20005
Telephone: (847) 807-5237
andrew@andrewstraw.com
*Plaintiff*, Proceeding *Pro Se*
www.andrewstraw.com