UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW U.D. STRAW,

                Plaintiff,

          -against-                        20-CV-3251 (LLS)

WOLTERS KLUWER UNITED STATES,      ORDER OF DISMISSAL
INC; LISA G. LERMAN; PHILIP G. SHRAG;
ROBERT RUBISON,

                Defendants.

LOUIS L. STANTON, United States District Judge:

      Plaintiff, appearing *pro se*, brings this action alleging that Defendants retaliated against him, in violation of the Americans with Disabilities (ADA). In 2017, an Indiana state court suspended Plaintiff from the practice of law in Indiana on the ground that he repeatedly violated a professional conduct rule against bringing nonmeritorious actions, including by bringing an action against the American Bar Association in which he sought to vindicate the rights of the disabled. Wolters Kluwer United States, Inc., has published a book on legal ethics that included a description of the decision to suspend Plaintiff. Plaintiff now sues Wolters Kluwer and three individuals, alleging that they colluded with the Indiana state court to retaliate against Plaintiff in violation of the ADA for bringing an action opposing disability discrimination. Plaintiff also asserts a state law claim for intentional infliction of emotional distress.

      By order dated April 30, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.

## STANDARD OF REVIEW

      The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following allegations are from Plaintiff Andrew Straw's complaint. Plaintiff has "severe physical and mental disabilities" and qualifies as disabled for purposes of the ADA. (ECF 2 at ¶ 4). Wolters Kluwer published a book titled, "Ethical Problems in Law," with eISBN 978-1-5438-1744-7. (*Id.* at ¶ 18). The following excerpt from the book, which mentions Plaintiff, is available online to the public:

> The lawyer should have known that his claims were groundless. Attorney Andrew Straw asserted baseless claims or defenses in four different lawsuits. In one of these four (as an example), he sued the American Bar Association and law schools to require each defendant to collect disability data from students and faculty and supply it to him. The Americans with Disabilities Act (ADA), under which he made his claim, did not require such disclosure. In fact, if the data had been disclosed, it would have violated law protecting the privacy of student records. Straw was found to have violated Rule 3.1 by filing lawsuits that had no legal basis.

(*Id.* at ¶ 48).

Plaintiff contends that "[t]he book ridiculed me by making me seem totally incompetent just for asking [for] this information[. I]t seems the only information the defendants relied upon was the Indiana discipline order, *In Re Straw*, 68 N.E.3d 1070 (Ind. 2/14/2017)." (*Id.* at ¶ 46). He states that "the language [to which he] object[s] concerns [his] bogus Indiana Supreme Court discipline." (*Id.* at ¶ 20).

In that disciplinary action, *In Re Straw*, 68 N.E.3d 1070 (Ind. 2017), *cert. denied sub nom. Straw v. Ind. Supreme Court*, 137 S. Ct. 2309 (2017), the Indiana Supreme Court suspended Plaintiff from the practice of law for violations of Indiana Professional Conduct Rule 3.1, which prohibits bringing a proceeding or asserting an issue unless there is a nonfrivolous basis in law and fact.[1] Plaintiff asserts that the publisher "should have asked me before ridiculing

---

[1] In *Matter of Straw*, 68 N.E.3d at 1072, the court stated: "The four disciplinary counts in this case arise from frivolous claims and arguments advanced by Respondent in four lawsuits,

3

me," and that "this blistering attack in a major book on legal ethics cannot stand." (*Id.* at ¶ 47.) Plaintiff also rehashes arguments that he made in his suspension proceedings and elsewhere that his suit against the ABA was not frivolous because he did not seek to collect private data but rather sought to amend "form 509" in order to collect information about disability, in addition to race and gender. (*Id.* at ¶ 49).[2]

Plaintiff styles this action as a suit under "Title II/Title V" of the ADA, alleging that the publisher and its employees retaliated against him for his having filed the disability discrimination suit, *Straw v. ABA.*, No. 14-CV-0519 (N.D. Ill. 2015), which is one of the suits that was deemed frivolous and was part of the basis for his suspension from the practice of law in Indiana. Plaintiff invokes "42 U.S.C. § 12203 and 28 C.F.R. § 35.134 [which] prohibit[s] retaliation by anyone." (ECF 2 at 16, ¶ 60). He argues that "[r]epublishing the vicious attacks . . . amount to additional retaliation and collusion with that state supreme court." (*Id.* at ¶ 62).

In addition to his claim for retaliation in violation of the ADA, 42 U.S.C. § 12203, Plaintiff asserts claims for intentional infliction of emotional distress, and seeks a "declaratory judgment that even though [his] 2014 ADA case against the ABA was dismissed, it was not frivolous." (*Id.* at ¶ 77). Plaintiff indicates that he is not bringing a claim for defamation; he

---

three filed on his own behalf and the fourth filed on behalf of a client. . . . [W]e categorically reject Respondent's arguments that he is being persecuted for his disability-related advocacy . . . Respondent does not face discipline for standing up for disabled persons' rights, as he perceives, but rather for having done so incompetently. . . . [T]he Court suspends Respondent from the practice of law in this state for a period of not less than 180 days, without automatic reinstatement, effective immediately." *See also In re Straw*, 720 F. App'x 298, 301 (7th Cir. 2017) ("The Indiana Supreme Court conducted an evidentiary hearing, [and] its finding that Straw made frivolous filings is amply supported").

[2] The ABA suit was dismissed based on Straw's "lack of standing and failure to state a cognizable claim under the ADA. [Straw] did not appeal; rather, he sent a letter to the District Court protesting the standing requirement as a form of discrimination" *Matter of Straw*, 68 N.E.3d at 1071.

states that he understands that as a public figure, he cannot bring a claim for defamation. (*Id.* at ¶ 63).

## DISCUSSION

**A.     No Jurisdiction to Review State Court Decisions**

Federal district courts lack authority to review state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments."); *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) (federal district courts cannot "exercise appellate jurisdiction over state-court judgments").

Plaintiff alleges that in *In Re Straw*, 68 N.E.3d 1070 (Ind. Feb. 14, 2017), the Indiana Supreme Court characterized his ADA suit against the American Bar Association as frivolous and suspended him from the practice of law for violations of Indiana Professional Conduct Rules. He argues that the Indiana Supreme Court's characterization of his ADA suit involves a "falsehood that needs to be corrected," and that Defendants are "colluding with the Supreme Court and repeat[ing] those Indiana falsehoods. (ECF 2 at ¶¶ 49-50.) Plaintiff seeks a declaration that "what [he] did [that was] published in that book was not unethical by any means" and requiring the publisher to include a statement in the book that Plaintiff's ABA suit involved a "reasonable request that should have been granted and would be in this Court." (*Id.* at ¶ 76). In essence, Plaintiff seeks a declaration that the Indiana Supreme Court's suspension decision was wrong. Because this Court lacks jurisdiction to review or overturn a judgment of the Indiana Supreme Court, the Court dismisses this claim.

The Court also notes that other courts have already advised Plaintiff that he cannot pursue such relief. *See In re Straw*, 720 F. App'x 298, 299 (7th Cir. 2017) (Straw "principally attacks the Indiana Supreme Court's decision to impose discipline. We do not have jurisdiction to consider

5

these objections because only the United States Supreme Court may review attacks on state-court judgments . . . *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141–42 (7th Cir. 1999).").

**B.     Americans with Disabilities Act**

Plaintiff alleges that Defendants included his suspension decision in the ethics book in retaliation for his having filed a lawsuit against the ABA opposing disability discrimination, and in violation of "Title V/II" of the ADA. The ADA consists of several different parts: Title I, 42 U.S.C. § 12111 *et seq.*, prohibits discrimination in employment; Title II, 42 U.S.C. § 12131 *et seq.*, prohibits discrimination by public entities; Title III, 42 U.S.C. § 12181 *et seq.*, prohibits discrimination in access to public accommodations. *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 675 (2001); and Title V sets forth miscellaneous provisions, including a prohibition on retaliation, 42 U.S.C. § 42 U.S.C. § 12203.

The antiretaliation provision of the ADA states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

"To state a claim for retaliation under the ADA . . ., a plaintiff must show: (i) he or she was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 226 (E.D.N.Y. 2018) (addressing retaliation in the public services context) (citing *Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 366 (E.D.N.Y. 2018) (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d

6

Cir. 2002))); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[I]t is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA.").

Generally, "any activity designed "to resist or antagonize . . .; to contend against; to confront; resist; [or] withstand" discrimination prohibited by Title VII constitutes a protected oppositional activity." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) (quoting *Crawford v. Metropolitan Government of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Here, however, Plaintiff fails to plead any facts that could satisfy the third element of a retaliation claim. Publishing a book that accurately reports the Indiana state court's disciplinary decision against Plaintiff, even if he continues to dispute the court's decision, does not qualify as taking adverse action against Plaintiff.

Nor does Plaintiff plead any facts that could give rise to an inference that his suspension decision was used as an illustration in a book on legal ethics because of retaliatory animus against Plaintiff for his opposition to disability discrimination. Because Plaintiff fails to plead facts suggesting any causal connection between his ABA suit opposing discrimination and any adverse action against him, Plaintiff fails to state a claim that any Defendant retaliated against him in violation of his rights under the ADA.

C.     **Intentional Infliction of Emotional Distress**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the Court has dismissed the federal claims over which the Court has original jurisdiction.

7

It is unclear, however, whether Plaintiff might be able to invoke the Court's diversity jurisdiction. Plaintiff seems to allege that he is a United States citizen domiciled in the Philippines (ECF 2 at ¶ 1) ("My residence is in the Philippines now"), though he provides a mailing address for himself in Washington, D.C. According to some public records, Defendant Wolters Kluwer is a corporation organized under the laws of the State of New York, which has its headquarters in Illinois.[3] Plaintiff has not identified the individual defendants or pleaded any facts about where they reside. *But see Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) (holding that generally a district court should allow a plaintiff "to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship."). Because Plaintiff might be able to invoke the Court's diversity jurisdiction, the Court addresses Plaintiff's state law claim.

Plaintiff brings his claims for intentional infliction of emotional distress under New York law (ECF 2 at ¶ 66), and the Court assumes that the law of the forum state applies. In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). The requirements to satisfy the tort are "stringent." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

Here, Plaintiff's allegations that information about his disciplinary proceedings was published in a book on legal ethics do not involve "extreme and outrageous conduct." *Bender*, 78

---

[3] *See, e.g., Fairchild v. Wyeth LLC et al.*, No. 11-CV-00644 (ECF 1, Notice of Removal, Exh. A).

F.3d at 790. Moreover, the full decision in that disciplinary matter is already a matter of public record and is available in publicly accessible case law databases. *See In Re Straw*, 68 N.E.3d 1070 (Ind. Feb. 14, 2017). Plaintiff's allegations that Defendants reprinted information about his suspension therefore do not state a claim for intentional infliction of emotional distress, and the Court dismisses these allegations for failure to state a claim on which relief can be granted.[4]

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed.

SO ORDERED.

Dated:   May 1, 2020
         New York, New York

                                          _____
                                                 Louis L. Stanton
                                                 U.S.D.J.

---

[4] The Court also notes that "the Free Speech Clause of the First Amendment can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress." *Snyder v. Phelps*, 131 S. Ct. 1207, 1211 (2011) (relying on *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–51 (1988)). "[S]peech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it "is a subject of general interest and of value and concern to the public," *Id.* (citations omitted). Information about attorney disciplinary proceedings may well qualify as a matter of public concern. *See also Bartnicki v. Vopper*, 532 U.S. 514, 527–28 (2001) ("Where a publisher obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order.").